A. W. CRAWFORD, Appellant, v. CITY OF WINTERSET, Appellee.

CEMETERIES: Regulation—Municipal Corporations—Improvement
1 of Walks. Even admitting that a city council had given plaintiff, who had purchased a circular lot in a cemetery established

and maintained by the city, a right to improve a walk surrounding the tract upon which plaintiff had built a mausoleum, the right acquired by the plaintiff was a revocable license, which a court of equity could not enjoin the withdrawal of, as the purchasers of lots have an easement in the walks and driveways of the cemetery. *Held* that, where the plaintiff had placed a cement curb around the walk, giving the impression to observers that the entire area encircled by the curb was plaintiff's, the city was justified in revoking the license and requiring the removal of the curb, and that, the license being in its nature merely personal, its revocation was not a legal wrong.

**CEMETERIES:** Regulation—Municipal Corporations—Revocable Licenses. In a suit to enjoin the city from enforcing an order revoking a privilege granted to improve a cement walk in a driveway surrounding a lot in a cemetery established and maintained by the city as a public burial place, *held* that the erection of a cement curb around the outside of the walk was in excess of the privilege granted, and that plaintiff did not have an irrevocable license, although he had gone to the expense and trouble of making the improvement.

**LICENSES:** Public Places—Revocable License—Acquiescence of City Officers. A claim of irrevocable right in a street or public place cannot be predicated upon the ground alone that some of the city officers saw improvements in the course of construction and did not forbid them.

*Appeal from Madison District Court.*—J. H. APPLEGATE, Judge.

MAY 21, 1919.

SUIT in equity to enjoin defendant city and its officers from interfering with certain improvements constructed by the plaintiff in a public cemetery. The material facts are stated in the opinion. The trial court dismissed the bill, and plaintiff appeals.—*Affirmed.*

*A. W. & Phil R. Wilkinson,* and *W. S. Cooper,* for appellant.

*W. D. Lucas,* and *John A. & W. T. Guiher,* for appellee.

WEAVER, J.—The cemetery in question was established and is maintained by the city of Winterset as a public burial place.  For that purpose, it was surveyed and platted with lots of varying forms and sizes, together with streets and alleys and passageways affording convenient access to the several divisions of the premises.  One portion of such plat was laid out as indicated in the following diagram:

The central circular lot or tract is 33 feet in diameter. Surrounding it is a circular walk or passageway, 7 feet in width.  On the outer border of this walk are burial lots

or blocks, numbered 1 to 8. Outside of these lots is a circular driveway, concentric with the walk above mentioned. The driveway is surrounded by still other lots. Radiating from the 7-foot walk are 8 passages, separating the 8 lots first mentioned from each other, and extending to and across and beyond the driveway, affording convenient access to all the several burial places. Prior to the year 1911, all the series of 8 lots surrounding the 7-foot walk had been conveyed to individual purchasers for burial purposes, and upon several of them were graves, some of which were marked by monuments. The central circular tract remained unsold and unimproved until February 18, 1911, when the city, for a consideration named, sold and conveyed it to the plaintiff, Crawford. The deed mistakenly described the tract as being 32 feet in diameter, instead of its true platted measurement, 33 feet. It contained the statement that the conveyance was made for the purpose and upon the express condition that the property "be used as a place upon which to erect a mausoleum in which to deposit the dead, and be subject the general regulations made or to be made for the government of the city cemetery by the city of Winterset." Four years later, plaintiff applied to the city council for another deed, correcting the error in description, and at the same time expressed his desire to improve and care for the 7-foot walk, and thereby improve and beautify, not only his own property, but the adjacent portion of the cemetery as well. Acting upon this request, the council adopted a resolution, the preamble of which recited that, whereas the former deed had mistakenly described the tract as but 32 feet in diameter, and whereas Crawford had "erected a mausoleum on such tract, and desires some additional ground for parking and curbing," it was therefore ordered "that the mayor execute and deliver to the said A. W. Crawford a correction deed conveying the following tract, to wit: All of the circular tract of

ground, lying and being inside of the inner circle formed by Lots 1, 2, 3, 4, 5, 6, 7, and 8 inside the circular driveway in the plat of the Addition to the Winterset Cemetery of 1870." Thereupon, the mayor made and delivered the deed as directed, describing the property as found in the words of the resolution. On the same day (whether before or after the delivery of the deed does not appear), the council committee on public grounds gave plaintiff written permission to clear the walks between or around said lots, and "to bring said lots and walks to a uniform grade, to set corner stones, to make said walks or approaches of cement or crushed stone, and to fill the roadway surrounding the outer circle with crushed stone."

Soon after obtaining the correction deed, Crawford proceeded to bring the 7-foot walk to a grade conforming to the level of his lot, and enclosed the entire area (mausoleum lot and the surrounding walk) with a cement curb. The curb is set upon the outer boundary of the walk, and is raised some 4 to 6 inches above the level of the enclosure. It is constructed without any openings into the radiating passageways which separate the surrounding lots and connect with the circular walk, except the passageway between Lots 3 and 4, which leads from the outer driveway direct to the front of the mausoleum; and this, plaintiff paved with cement. The natural surface of the ground outside of plaintiff's lot is somewhat irregular; and the effect of the grading and curbing was to elevate the walk, in places, considerably above the burial lots bordering thereon. The general nature and effect of the improvements we have described is shown by the following cut from a photo-

graph of the south front of the mausoleum and its surroundings:

Plaintiff, if we understand the record, filled some of the burial lots outside of the curb, to bring them up to grade with the walk, and proposed to fill others. In one or more instances, where monuments or headstones had fronted toward the mausoleum, he moved them to the foot of the graves, and faced them toward the outer driveway. When he had carried on the work on and about his lot and its surroundings far enough to make clearly visible its general nature and effect, owners of lots bordering upon the platted 7-foot walk began to complain, and in the end applied to the city council to put a stop to the changes plaintiff was making in the cemetery outside of his own lot, and to require him to restore the premises to their original condition, and especially to remove the curb, by which they asserted that he had, to all intents and purposes, appropriated the 7-foot walk, and made it a part of his mausoleum

property.  As a result of the dissension thus aroused, the city council adopted a resolution revoking the license and privilege theretofore granted the plaintiff, ordered him to remove from the 7-foot walk all erections, obstructions, and material by him placed thereon, and to replace in their former positions all stones and markers removed or changed by him; and, upon his failure to comply with such order within 20 days, the sexton of the cemetery was directed to make the required changes.  Thereafter, plaintiff brought this suit in equity against the city and its officers to permanently enjoin the enforcement of said order, and prevent interference with the improvements he had made.

Defendant's answer is, in substance, that plaintiff received permission to improve and maintain the 7-foot walk, not as a part of his own premises, but as a public way and path for the convenience and use of all lot owners, and for convenient public access to the graves in that vicinity; and that he abused the privilege or license so granted, by taking possession of the walk and treating it as his own, and by enclosing it within his curb, which obstructed the entrances thereto, and in other ways assuming to himself absolute control of said area, and excluding others therefrom.  Certain of the lot owners immediately interested also intervened in the action, and united with defendants in resisting plaintiff's demand for relief.

The issues were tried to the court, which found that the city council was acting within its authority in ordering the removal of the curb.  It further found that plaintiff, in making the changes and improvements,

1. CEMETERIES: regulation: municipal corporations: improvement of walks.

was not a wrongdoer or trespasser, but that the authority or consent of the city for doing such work was, at most, a revocable license, and that the removal of the curb should be done at the expense of the city.  A decree to that effect was entered.  Certain other provisions were made for

marking the boundaries of the walk and the corners of the burial lots, and the costs of the suit were apportioned between the parties.  The plaintiff appeals.

Because of the somewhat novel character of the dispute presented by this record, we have made an unusually extended preliminary statement of the facts; but the law applicable thereto is, in our judgment, not open to serious question.  Both in pleading and in his testimony on the trial plaintiff disclaims any pretense of title to any of the property except the circular tract, 33 feet in diameter, and recognizes the public character of the encircling 7-foot walk; but he does claim that, by the grant or permission of the city, he acquired the right to improve and beautify the walk, and thus, while improving the convenience and appearance of the cemetery, incidentally improve the surroundings of his mausoleum.  Having thus conceded, as indeed, under the conceded facts, he must, the public character of the walk, he in legal effect concedes the authority of the city to control the manner and extent of its improvement.  Let it be admitted, for the purposes of this case, that the city council could and did give the plaintiff permission to grade or gravel or pave or otherwise improve the walk, it follows, of necessity, that the right so acquired was, as held by the trial court, a revocable license only, and that a court of equity cannot properly enjoin its withdrawal.  When the cemetery was platted and dedicated to public use, and lots were sold according to their platted description, the purchasers acquired an easement in the driveways and walks for the use and convenience of the several lots.  The city itself neither reserved, nor had any right to ignore this easement, or to take away the public character of the drives and walks, unless it be by some action in court or in the council, of which the parties in interest have notice and opportunity to be

2. CEMETERIES:
regulation:
municipal corporations:
revocable
licenses.

heard, if they so desire. There is nothing inherently improper in allowing lot owners to care for adjacent walks, subject, of course, to the reasonable supervision and control of the city; and where such privilege has been accorded, and difference of opinion arises between the lot owner and the city as to the kind of care to be exercised or nature of the improvement to be made, the superior right and authority of the city must, in the very nature of the situation, be recognized. And this is no less true even though the court may be satisfied that the views and plans of the lot owner are more in accord with good judgment and good taste. So, too, if the permission be given, and the city thereafter sets up the claim that the lot owner has exceeded the limits of his permit, or abused the privilege granted, and on that ground recalls it, the authority so to do cannot be doubted. The license being, in its nature, merely personal, its revocation is not a legal wrong.

While it may appear to some that the facts in the case present slight cause for contention and litigation, yet it is not very strange that the owners of lots in the immediate vicinity of plaintiff's mausoleum should resent and object to some features of the improvements made by him. He acquired title to an area of but 33 feet in diameter; but, by throwing a continuous curbing around the outside of the circular walk, and filling, grading, and grassing the entire enclosure within the curb, he occupies, for all practical purposes, a circle 47 feet in diameter, thus more than doubling the area of his individual occupation. In so doing, as we have already noticed, he has also, by his curb, closed all the entrances to the 8-division passages or walks from the circular walk, except the one which he has paved from the driveway to the entrance of his mausoleum, a plan which accentuates to a marked degree the impression which the observer must receive that the entire area of the enlarged circle is his personal domain. There is, as the last-

above illustration indicates, no surface appearance of a path or walk inside the curb. It is, to use plaintiff's own expression, one continuous lawn. Those who wish to visit or do work upon or about the graves on Lots 1 to 8 can pass into the walk or around the heads of the graves into the adjoining passage only by stepping over the intervening curb. If, under such circumstances, persons maintaining burial places in that immediate vicinity, and not able to indulge in like munificent provision for improvement and ornamentation of the graves of their dead, should object to any encroachment upon their legal rights, simply to magnify the effectiveness of plaintiff's elaborate ornamentation of his lot, it cannot be condemned as unnatural or unreasonable.

To affirm the decree below is not to adjudge the plaintiff guilty of any conscious or intended wrong. He has expended a large amount of money for the commendable purpose of perpetuating the memory of his dead and beautifying their last resting place, and we are sure that neither the city nor his fellow lot owners have any desire to thwart his reasonable desires to that end. The enlargement of his grounds by the inclusion therein of the circular walk was not a part of his original plans, for the mausoleum had already been built before the correction deed was given him, and before he sought permission to make the improvements. The removal of the curb and the maintenance of the walk for the purpose for which it was platted can detract very little from the real attractiveness of his property, while it does eliminate the objectionable air of exclusiveness which is quite inseparable from the arrangement as it now exists.

Appellant relies, in argument, upon the thought that, plaintiff having expended time and money in the enterprise, his license became irrevocable. The facts do not, in our judgment, bring the case within the rule so invoked. The decree below interferes very little with the plaintiff's

improvements, except as to the curb by which he has incorporated the circular walk within his own premises. There was no express permission given him to build this curb. Nowhere in the preliminary proceedings was a curb mentioned, except in connection with the making of a new deed, the express purpose of which was to convey to plaintiff a circle of 33 feet in diameter, instead of 32 feet, and we think that a fair construction to put upon these references is that plaintiff desired to have his title to the full 33 feet confirmed by the second deed, in order that he might safely curb his lot to the extent of its true diameter; or, in other words, that he might include within his curb the entire area inside the 7-foot walk. No one else seems to have understood that he asked or was granted leave to put his curb outside of the walk. He concedes that he acquired no title to the walk, and that the use of such walk is still a public right; yet he pleads and testifies that he not only did enclose it within his curb, but he leveled the entire circle, including the walk, sowed it in blue grass, "and converted it into a neat and ornamental lawn." This, it appears to us, was clearly in excess of the privilege alleged to have been granted, and the only license that can be claimed therefor is such as can be implied from the fact that some of the city officers saw the work in its course of construction, and did not forbid it. A claim of irrevocable right in a street or public place cannot be predicated upon such ground alone.

3. LICENSES: public places: revocable license: acquiescence of city officers.

We regard it unnecessary to go into any review of the authorities. None of the precedents cited is inconsistent with our conclusion, and the general propositions to which we have adhered are elementary. The decree of the district court is fully sustained by the record, and it is—*Affirmed.*

LADD, C. J., GAYNOR and STEVENS, JJ., concur.